UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In Re                                                    06-CV-0208E
        MAUREEN R. DAVIS,                                03-BK-16085B
                        Debtor.

MAUREEN R. DAVIS,                                        MEMORANDUM
                Plaintiff-Appellee,
                                                              and
        -vs-
                                                         ORDER[1]
EDUCATIONAL CREDIT MANAGEMENT
  CORPORATION,

                Defendant-Appellant.

## BACKGROUND

Plaintiff, Maureen R. Davis ("Davis"), has twice previously been granted

orders in Bankruptcy Court, one resulting in financial reorganization and the other

discharging her from all dischargeable debts.  However, because such orders do

not operate to discharge certain federally guaranteed student loans, Davis

commenced an adversary proceeding seeking a determination by the Bankruptcy

Court of the dischargeability of the subject student loans, owed to or guaranteed

by the defendant, Educational Credit Management Corporation ("ECMC").[2]  The

_____

[1]This decision may be cited in whole or in any part.

[2]In 1997, Davis filed a chapter 7 petition which she then converted into a proceeding
under chapter 13.  ECMC was the only creditor to file a claim in that case and received a
(continued...)

basis for the action is 11 U.S.C. §523(a)(8) which specifically provides that educational loans will not be discharged unless failing to discharge the obligation will impose an undue hardship on the debtor and the debtor's dependents.  A trial was conducted in Bankruptcy Court on this issue and on January 17, 2006 a Decision and Order was issued ("the Bankruptcy Order") which granted judgment to Davis, although declaring only a partial discharge of her educational loans pursuant to §523(a)(8).  (Dkt. #1, part 24).[3]  Presently before the Court is ECMC's appeal of that Bankruptcy Order, urging that the Bankruptcy Court erred in failing to consider that student loan debt is presumptively non-dischargeable and also that the court erred in its *Brunner*[4] undue hardship analysis and its application.

## **DISCUSSION**

Jurisdiction is conferred upon the District Courts to hear appeals from decisions of the bankruptcy courts pursuant to 28 U.S.C. §158.  This Court reviews the Bankruptcy Court's legal conclusions *de novo* and its findings of fact and factual conclusions for clear error.  *In re Manville Forest Prod. Corp.*, 896 F.2d 1384,

---

[2](...continued)
distribution of ten percent of its claim pursuant to a plan that Davis successfully completed in 2001.  On August 13, 2003 she filed another petition for relief under chapter 7 of the Bankruptcy Code (the underlying petition) and on November 5, 2003, commenced the present proceeding to determine the dischargeability of the remaining student loan obligation to ECMC.

[3]The document herein is located as such in the civil docket on appeal, not the Bankruptcy Court docket.  In the Bankruptcy docket, this document is #33.

[4] *Brunner* v. *New York State Higher Education Services. Corp.,* 831 F.2d 395 (2d Cir. 1987).

1388 (2d Cir. 1990) (citing Fed. R. Bankr. P. 8013). Further, "whether non-discharge under §523(a)(8)(B) would create an 'undue hardship' requires a conclusion of law by the bankruptcy court and therefore is subject to *de novo* review by the district court on appeal." *Wheeler* v. *Student Loan Marketing Ass'n*, 1994 WL 55764, *2 (W.D.N.Y. 1994)(other citation omitted). The Court "may affirm, modify, or reverse [the Bankruptcy Order] or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

In cases brought pursuant to §523(a)(8), the burden is on the debtor to prove, by a fair preponderance of the evidence, that failure to discharge the loans would constitute an undue hardship. *Wheeler, supra* at *3 (*citing In re Garneau*, 122 B.R. 178, 179 (Bankr. W.D.N.Y. 1990)). In *Brunner*, the United States Court of Appeals for the Second Circuit adopted the District Court's findings and thereby established a three-prong test to determine if a debtor is eligible for an undue hardship discharge of student loan debt. 831 F.2d 395 (2d Cir. 1987) (per curiam). Under *Brunner*, Davis must prove the following:

> (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this current state of affairs is likely to persist for a significant portion of the repayment period; and

(3) that she has made good faith efforts to repay the
loans.

831 F.2d at 396.  In order to satisfy this burden, Davis must establish all three prongs of this *Brunner* test by a preponderance of the evidence.  *Wheeler, supra* at *3; *Garneau*, *supra* at 180 (*citing In re Harris*, 103 B.R. 79 (Bankr. W.D.N.Y. 1989)).  "Equitable concerns or other extraneous factors not contemplated by the *Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability."  *In re Faish*, 72 F.3d 298, 306 (3d Cir. 1995)(adopting and applying *Brunner*).

"The first part of this test has been applied frequently as the minimum necessary to establish 'undue hardship'."  *Brunner* at 396 (citations omitted).  "If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability."  *In re Faish*, *supra* at 306 (*citing Matter of Roberson*, 999 F.2d 1132, 1135 (7th Circuit 1993)(also adopting and applying the *Brunner* test)[5]); *see e.g. In re N. M.*, 325 B.R. 507 (Bankr. W.D.N.Y. 2005) (because the debtor failed to satisfy the first prong of the test in *Brunner* the court ruled that it did not need to consider either of the other two requirements).

---

[5]In this regard, *Roberson* specifically states that "[t]his [first prong of the] test should serve as the starting point for the §523(a)(8)(B) inquiry since information regarding the debtor's current financial situation generally will be concrete and readily obtainable; only if the debtor meets this test should a court examine the other two Brunner requirements." 999 F.2d at 1135.

ECMC argues that the Bankruptcy Court's Order was erroneous in that it failed to consider that student loan debt is presumptively non-dischargeable and that it improperly considered *Brunner* in the following ways:

> (1) when determining standard of living, the Bankruptcy Court improperly examined only individual income in finding a "minimal" standard of living and when properly considering total household income, it incorrectly accepted a "modest" standard of living as satisfaction of this requirement;
>
> (2) the evidence did not support a finding that Davis established that she has additional circumstances which make it likely that her dire state of financial affairs will persist and neither did it consider household income in considering this element;
>
> (3) the evidence did not support a finding that Davis demonstrated that she made the requisite good faith effort to pay back the loans (*i.e.*, lack of payment history, failure to maximize income and minimize debt and failure to explore alternative payment options).

Davis agrees with the standard of review and applicability of *Brunner* as presented by ECMC but argues that *Brunner was* properly analyzed and applied. Further, she claims that it is ECMC's mis-characterization of the *facts* which make it seem as though it was not.  She urges that a review of the facts as the

Bankruptcy Court found them, as this Court must do, will demonstrate that the analysis and findings pursuant to *Brunner* were proper.

The facts as found by the Bankruptcy Court are briefly recited as follows. Davis graduated with a Bachelor of Arts degree from the State University of New York at Fredonia in 1989, majoring in sociology, with concentrations in social work and gerontology.  To finance that education, she received a series of student loans in the total amount of approximately $9,000 and in 1995 consolidated these loans and any accrued interest into a single obligation with an original principal balance of approximately $11,000.   In 1998, this obligation was assigned to ECMC.  As of December 2, 2004, the consolidated debt for this loan had an outstanding balance, including principal, interest, collection costs and fees, of approximately $30,000.  Davis continues to incur interest charges of $5.33 per day or approximately $1,945 per year.

As of the date of the Bankruptcy Order, Davis was 46 years of age and had been married to her husband, Dale, for approximately eleven (11) years.  They had no dependents, and resided together in a house owned by Dale which, at trial was described as a "handyman special" that is falling apart, "needs help" and is mostly furnished with used items having little or no resale value.  Both Mr. and Mrs. Davis owned modest automobiles at that time, one of which was more than

fifteen years old.   The Bankruptcy Court found that the evidence clearly demonstrated that Mr. and Mrs. Davis have lived without extravagance.

Further, Davis testified at trial that she maintained a small investment account, which had a value of $757.79 and otherwise owned no liquid assets and possessed no other property that could be liquidated for any meaningful sum of money.  She worked part-time as an activities aide in a nursing home, where she earned a gross income of approximately $8,000 per year.  Her husband earned a gross income of approximately $21,000 per year as a clerk at the Department of Motor Vehicles for Chautauqua County.

The parties do not dispute that, during this time, the self-sufficiency standards issued by the Bureau of Labor Statistics of the United States Department of Labor for a single individual living in Davis's county of residence calculated a per year self-sufficiency wage of $14,580 and $22,788 per year as a self-sufficiency wage for two adults.  It appears that the parties agreed to use these figures to measure standard of living, inasmuch as an analysis of income versus expenses was not conducted or anywhere discussed in the Bankruptcy Order.

The Bankruptcy Order acknowledged the great difficulty Davis encountered in securing employment within her fields of study, notwithstanding her extensive efforts to do so, and also found that she had been compelled to accept a series of

jobs paying little more than minimum wage.  The Order noted that her periods of employment were often interspersed by long stints of unemployment and, as more than fifteen years had passed since her graduation from college, it was reasonably anticipated that little prospect existed for enhanced earnings.  Also, since 2002 Davis was receiving medical treatment for depression, the Order found that this further limited her ability to accept more challenging employment.

*Presumptive non-dischargeability*

Other than arguing that the law (*Brunner* in particular) places a strict and heavy burden on debtors seeking to discharge student loan obligations, ECMC does not articulate its argument in this regard.  The Court, rather construes this argument as simply a conclusion that, because the Bankruptcy Order discharged the debt without following the requirements set forth in *Brunner*, it did not sufficiently consider the strict constraints of presumptive non-dischargeability established in §523(a)(8) and expounded in *Brunner* and its progeny.  In any event, the gravamen of the appeal herein relates to the Order's analysis and application of *Brunner* and shall therefore be the focus of this Memorandum and Order.

*Minimal Standard of Living Requirement*

As stated above, this first part of the *Brunner* test is viewed as the minimum necessary to establish undue hardship and shall be addressed first. *In re Faish, supra*, 72 F.3d at 306; *Matter of Roberson,* 999 F.2d at 1135. Throughout the opinion, the Bankruptcy Order made the following statements that impact upon ECMC's key argument that *Brunner* was improperly applied with respect to this first requirement:

> "Maureen Davis would satisfy the standard of *Brunner*, if one were to consider only her own income and resources, without contribution from her husband;
>
> "Accordingly, if she were the only wage earner in her household, the court would find that she could not now maintain a "minimal" standard of living if forced to repay the student loan;
>
> "Although repayment of the student loan would impose an undue hardship if Maureen Davis was living on her personal income only, she instead resides with a spouse who is himself gainfully employed;
>
> "Thus, the household unit would appear to receive wages that are at least $6,000 more than a self-sufficiency income" (Dkt. #1, part 24, pp. 4-6).

Without accepting or crediting either of the parties' positions, the Bankruptcy Order then simply notes ECMC's contention that this $6,000 excess

would allow payment without imposition of an undue hardship and also notes Davis's argument that her husband has no liability on the loan and, because she "believes that she is obligated to contribute fairly to household expenses, and $*$ $*$ $*$ any such fair contribution would leave no resources from which to pay the student loan."[6]

Describing it as a "special problem", the Bankruptcy Order proceeds to determine that the facts of this case are "fundamentally different than those considered by the court in *Brunner*" in that the debtor in *Brunner* was the sole income source for the household and in the present case, there are two wage earners and Davis's husband provides the majority of the family income. (Dkt. #1, part 24, p. 6). Hence, it opines that "[w]ith respect to the first prong of the *Brunner* test, Maureen Davis's own income provides no easy guidance to the ultimate question of whether repayment would impose an undue hardship upon her household." (*Ibid*.) A discussion of what standard would be appropriate to address Davis's factual circumstance[7] was left unanswered. Instead, the Bankruptcy Order determined that it "need not now consider the consequences of substantial earnings by a non-debtor spouse" because, "[a]lthough their

---

[6]Other than making this comment about Davis's "belief", the Bankruptcy Order contains no discussion of evidence or factual findings that Davis was contributing, ever contributed, or had actually planned to contribute to any of the household expenses. (Dkt. #1, part 24, p. 6).

[7]*I.e.*, two wage earners with the non-debtor providing the majority of the family income.

combined wages exceed the standard for self-sufficiency, Mr. and Mrs. Davis still receive incomes that would allow only a *modest* standard of living." (Dkt. #1, part 24, p. 7, emphasis added).  However, the opinion then seemingly reverts back to a consideration of only Davis's income, stating that "where the debtor herself earns less than a self-sufficiency income, the limits of undue hardship can only be determined by all of the circumstances of this case." (*Ibid.*)

One of ECMC's primary arguments is that the Bankruptcy Order erred in failing to utilize total household income in evaluating this first *Brunner* element. *Brunner* does not specifically require that total household income be utilized in considering this element, rather it simply states that the standard of living should be evaluated "based on current income and expenses".  *Brunner* at 396.[8] However, well established case law makes it clear that total household income, including that of a non-debtor spouse, live-in companion, life partner and contributing co-habitant, must be considered in conducting this minimal standard of living analysis, as well as its relevance in generally determining undue hardship under the Bankruptcy Code.  *See In re French,* 2006 WL 2583646, *4 (Bankr. S.D.N.Y. 2006)(court considered debtor's income as well as non-obligatory assistance money given to her from her step-father); *Gizzi* v. *Educational Credit*

---

[8] In general, nor does §523(a)(8) of the Bankruptcy Code state that total household income be considered in determining undue hardship.

*Management Corp.,* --- B.R. ----, 2007 WL 624526, *3 (N.D.W.Va. 2007); *In re Geyer,* 344 B.R. 129, 132 (S.D.Cal. 2006); *Educational Credit Management Corp.* v. *Waterhouse,* 333 B.R. 103, 109 (W.D.N.C. 2005); *In re Sweeney*, 304 B.R. 360, 362 - 63 (D.Neb. 2002); *Educational Credit Management Corp.* v. *Buchanan,* 276 B.R. 744, 751 (N.D.W.Va. 2002); *In re Gill,* 326 B.R. 611, 626 (Bankr. E.D.Va. 2005); *In re Pobiner,* 309 B.R. 405, 416 (Bankr. E.D.N.Y. 2004)("this Court holds that the income of the Plaintiff's non-debtor spouse is properly considered in determining whether requiring repayment of the student loans would create an undue hardship"); *In re Wistuba,* 2003 WL 23838129, *4 (Bankr. D.Kan. 2003); *In re Dolan,* 256 B.R. 230, 236 (Bankr. D.Mass. 2000); *In re White,* 243 B.R. 498, 507 - 512 (Bankr. N.D.Ala. 1999)(in this seminal case, the court found "as a matter of law that [the non-debtor's spouse's] income should be considered in deciding whether [debtor] is able to pay his student loans and maintain a minimal lifestyle"); *In re Lorenz,* 337 B.R. 423, 432 (B.A.P. 1st Cir. 2006)(contributing co-habitant); *In re Archibald,* 280 B.R. 222 (Bankr. S.D.Ind. 2002)(live-in boyfriend); *In re Greco,* 251 B.R. 670, 679 Bankr. E.D.Pa. 2000)(stating that assistance to the debtor from any source must be weighed as a factor in determining the debtor's overall financial picture).

It is clear that the Bankruptcy Order found of *Brunner*'s requirements satisfied "if one were to consider only [Mrs. Davis's] own income and resources, without contribution from her husband". (Dkt. #1, part 24, p. 4). Based on the

above, however, this is clearly not the standard and, to the extent that the Bankruptcy Order found the first prong of *Brunner* satisfied in consideration of such, it was in error.

It can be construed that the Bankruptcy Order considered total household income with respect to the "minimal standard" test, as it was required to do.  In this regard it found that the Davis's "combined wages exceed the standard for self-sufficiency" and that they "receive incomes that would allow only a *modest* standard of living".  (Dkt. #1, part 24, p. 7).  These findings do not satisfy the first prong of *Brunner* and instead implore a finding that the prong has not been met. It is plain to this Court that the terms 'minimal' and 'modest' are not the same, nor does the Bankruptcy Order state that they are.  The problem here is that the Order does not expound upon the difference between the terms or even state why its modest standard finding is even relevant to an undue hardship finding.  To the extent that the Bankruptcy Order found or implied that the first prong of *Brunner* was satisfied upon this 'modest standard' finding, it was also in error.

If these were the only points of error argued by ECMC, the Court would remand this case for further findings by the Bankruptcy Court consistent with this opinion regarding consideration of total household income in analyzing and deciding *Brunner's* first prong.  ECMC, however alleges other errors.

*Additional circumstances indicating persistence of dire financial condition*

This is *Brunner's* second prong.

"The further showing required by part two of the test is also reasonable in light of the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt. Predicting future income is, as the district court noted, problematic. Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue'." *Brunner,* 831 F.2d at 396.

ECMC urges that the Bankruptcy Order erred in analyzing this requirement because it, again, only considered the debtor's individual income and also because the facts do not support a finding that this second *Brunner* prong was met. The Court agrees. With respect to failure to consider total household income, the Bankruptcy Order clearly states that its consideration of *all* of the *Brunner* prongs was based on individual income and resources.[9] The above law firmly establishes that total household income and circumstances is not only to be considered with respect *Brunner's* first prong, but is clearly relevant with respect to the entire undue hardship analysis. The Bankruptcy Order brushes aside Mr. Davis's assets, career, income or potential for increased career or financial opportunities when considering this second prong. He is not even

---

[9] See Dkt. #1, part 24, p. 4, lines 9 - 11.

mentioned in the Order's subsection that expressly considers this prong.  (See, Dkt. #1, part 24, pp. 4 - 5).  It is only briefly mentioned, generally throughout the Order, that he owns the house in which the couple live and that at the time of trial he earned approximately $21,000 per year as a clerk at the Department of Motor Vehicles in Chautauqua County.  This was in error.

The Court also finds that the facts, as the Bankruptcy Court found them, do not support a finding that the second prong of *Brunner* is satisfied.  The type of additional circumstances contemplated by *Brunner* are well beyond those hardships that normally accompany any bankruptcy.  *In re Frushour,* 433 F.3d 393, 401 (4th Cir. 2005) (*citing, In re Rifino,* 245 F.3d 1083, 1087 (9th Cir. 2001)).

> The second factor is, therefore, "a demanding requirement," [*In re Brightful,* 267 F.3d 324, 328 (3d Cir. 2001], and necessitates that a "certainty of hopelessness" exists that the debtor will not be able to repay the student loans, *id.* (internal quotation marks omitted); *see also* [*In re Tirch,* 409 F.3d 677,681 (6th Cir 2005)] (same); [*In re O'Hearn,* 339 F.3d 559, 564 (7th Cir. 2003)] (same).  Only a debtor with rare circumstances will satisfy this factor.  For example, although not exhaustive, a debtor might meet this test if she can show "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Oyler* v.

*Educ. Credit Mgmt. Corp. ( In re Oyler ),* 397 F.3d 382,
386 (6th Cir.2005).

*Frushour, supra* at 401.  Upon a review of the record herein, the Court holds that the facts of this case do not support the holding that Davis satisfied *Brunner's* second prong.  The facts relied upon in the Bankruptcy Order were Mrs. Davis's unsuccessful efforts to secure employment in her field of study hence being relegated to accepting a series of low paying jobs, her history of intermittent employment, the length of time since receiving her degree (15 years) and her treatment for depression (since 2002).  The Order further reasons that the depression and/or the treatment relative thereto "has further limited her ability to accept more challenging employment".  Based on these facts and considering Mr. Davis's household income and assets, the Order concludes that it is reasonable that little prospect for her enhanced earnings exist thereby holding that *Brunner's* second prong was satisfied. (Dkt. #1, part 24, pp. 4 - 5).

The finding that Mrs. Davis's depression in any way affected her ability to earn a reasonable living is actually contrary to the evidence presented at trial. There is no medical corroboration of diagnosis or prognosis by a medical professional and Mrs. Davis actually testified that her depression never caused her to lose a job or miss an interview or employment opportunity.  This cannot support a finding that this second prong is satisfied. *See In re Norasteh*, 311 B.R.

671, 678 (Bankr. S.D.N.Y. 2004); *Pobiner, supra* at 419; *In re Burton,* 117 B.R. 167 (Bankr. W.D. Pa. 1990).

Further, her "extensive efforts" to secure employment in her field of study are based only on her uncorroborated testimony and are nevertheless belied by this testimony when she admitted that she applied for only two jobs in the 12 - 18 months prior to the trial in this matter.[10]   Nevertheless, the mere inability to find a better-paying job is insufficient for a finding of an additional circumstance. *See In re Brunner*, 46 B.R. 752, 756-57 (Bankr. S.D.N.Y. 1987), *aff'd* 831 F.2d 395 (2d Cir. 1987) (debtor was unemployed and on welfare and was denied a discharge).

It is not disputed that Mrs. Davis is not disabled, nor does she have a serious illness.  She is well educated, has no dependents and no unusually high necessary expenses.  Other than presenting evidence of a lack of useable job skills, the facts relied upon in the Bankruptcy Order do not elicit the "certainty of hopelessness" that is needed to satisfy this "very demanding standard".  Rather, the Court finds that this evidence presents nothing beyond the typical hardships akin to bankruptcy and conversely support a finding that Mrs. Davis's circumstances were of "[m]ere inconvenience, austere budget, financial difficulty and inadequate present employment" and "are not grounds for discharging

---

[10]It was also established that she never worked more than 16 hours per week or held more than one part time job at a time.

educational debts under [§523(a)(8)]." *In re Wetzel*, 213 B.R. 220, 225 (Bankr. N.D.N.Y. 1996).

Based on the above facts and considering Mr. Davis's household income and assets, Mrs. Davis has failed to satisfy the second prong of *Brunner* and the Court's inquiry must thus end with a holding of nondischargeability.  As such, the 'good faith efforts to repay the loan' factor (the third *Brunner* prong) need not be addressed.

*The Partial Discharge*

Because there was no finding of undue hardship, it was also improper for the Bankruptcy Court to consider a partial discharge, under either §523(a)(8) or pursuant to its equitable authority under 11 U.S.C. §105(a).  *In re Saxman*, 325 F.3d 1168, 1173 - 75 (9th Cir. 2003)("before the bankruptcy court can partially discharge student debt pursuant to § 105(a), it must first find that the portion being discharged satisfies the requirements under §523(a)(8)"); *see also  In re Alderete*, 412 F.3d 1200, 1206 - 07 (10th Cir. 2005)("We agree with our sister circuits that a bankruptcy court cannot exercise its §105(a) powers to grant a partial discharge of student loans unless §523(a)(8) has been satisfied"); *In re Smith*, 328 B.R. 605, 614, fn.11 (B.A.P. 1st Cir. 2005)("Since the Smiths have not established undue hardship, we need not address the issue of partial dischargeability."); *In re Miller,* 377 F.3d 616, 622 -23 (6th Cir. 2004)("we stress that the requirement of undue hardship must always apply to the discharge of

student loans in bankruptcy--regardless of whether a court is discharging a debtor's student loans in full or only partially");  *In re Cox*, 338 F.3d 1238, 1243 (11th Cir. 2003), *reh'g and reh'g en banc denied,* 82 Fed. Appx. 220 (11th Cir.2003), *cert denied*, 541 U.S. 991 (2004)(rejecting the argument that §105 allows a bankruptcy court to partially discharge student loans if the undue hardship burden is not met and holding that "[t]he bankruptcy court's equitable powers ... do not allow it to override the specific statutory language found in §523(a)(8)"); *United States* v. *Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (unless the court first ensures itself that the debtor has met the requirements under §523(a)(8), the court's discretionary use of its equitable authority amounts to an impermissible "roving commission to do equity.")(cited in *Saxman*).

In other words, had the Bankruptcy Order found that Mrs. Davis demonstrated under *Brunner* that undue hardship would result if she were required to pay the entire obligation, only then could it consider what portion of the obligation could be maintained without resulting in undue hardship and discharge the rest. *See, e.g., In re Reed*, 2005 WL 1398479, *1 (Bankr. D.Vt. 2005) ("A partial discharge is appropriate where, as here, the debtor has demonstrated that undue hardship would result if she were required to pay the entire obligation --applying all three prongs of the *Brunner* test -- but the record also reflects that it would not be an undue hardship for the debtor to pay a portion of the student loan debt under the future prospects prong of the *Brunner* test"); *In re Kenny,* 313

B.R. 100, 109 (Bankr. N.D.N.Y. 2004) (partial discharge not awarded because debtor had not taken advantage of various options to increase the affordability of her student loans); *In re Holman*, 2003 WL 24250751, *5 (Bankr. E.D.Va. 2003)(after demonstrating that all three *Brunner* prongs were met, only a partial discharge was awarded *"to the extent* that repayment would cause undue hardship under 11 U.S.C. §523(a)(8)"*).

That is not what happened here.[11] Instead, the partial discharge was given simply upon the "practical consideration" that it was all that the creditor could recover (e.g., through garnishment of wages, attachment or execution) under New York law anyway.  This approach is without basis in law and is contrary to the requirements of *Brunner* and its principles as discussed above.  *See generally, In re Faish, supra,* at 306 ("Equitable concerns or other extraneous factors not contemplated by the *Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability.")  Further, it is of no consequence to the Court whether the debt is likely to ever be paid in full, or to what extent a creditor will ultimately be able to recover on it.  *See e.g., DeRose* v. *EFG Technologies, et. al.,* 316 B.R. 606, 609 (Bankr. W.D.N.Y. 2004)("The debt is

---

[11] The Court notes that, at one point, the Bankruptcy Order states that "[i]n the present instance, hardship derives from the fact that the debtor finds herself in a position from which it is impossible to extricate." (Dkt. #1, part 24, p. 8).  The Court considers this statement to be dicta.  Nevertheless, it certainly does not suffice as a finding of "undue hardship".  Even if intended as such by the Bankruptcy Court, it does not comport with §523(a)(8) because it is not based upon a finding that such an impossible position was arrived at because the elements under *Brunner* had been satisfied.

not likely to be fully repaid.  But, what the creditor might eventually recover on the debt under non-bankruptcy law is not of consequence to this Court.").

## **CONCLUSION**

For the foregoing reasons, the Judgement of the Bankruptcy Court is vacated, the Bankruptcy Order awarding partial discharge is reversed and the matter remanded to the Bankruptcy Court with instructions to enter Judgment in favor of ECMC that the entire amount of the student loan is non-dischargeable.

DATED:      Buffalo, N.Y.

             July 18, 2007


                                    _____
                                        /s/ John T. Elfvin
                                    JOHN T. ELFVIN
                                    S.U.S.D.J.